UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JASON ANSEL TUBBS

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NUMBER 14-137-SDD-SCR

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, December 7, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JASON ANSEL TUBBS

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NUMBER 14-137-SDD-SCR

**MAGISTRATE JUDGE'S REPORT**

Plaintiff Jason Ansel Tubbs brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance and supplemental security income benefits ("SSI").

Based on the standard of judicial review under § 405(g), a careful review of the entire administrative record as a whole, and the analysis that follows, the Commissioner's decision should be affirmed.

**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Perez v.*

*Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Judicial review under § 405(g) does not require that all of the evidence support the ALJ's findings. Even if substantial evidence supports the claimant's position this is not a ground for reversal. As long as the ALJ's finding or decision is supported by substantial evidence in the record as a whole it must be affirmed.[1]

---

[1] *Carroll v. Dept. Health, Ed. and Welfare*, 470 F.2d 252, 254, n. 4 (5th Cir. 1972) (as long as there is substantial evidence to support the Commissioner's determination, the quantity of evidence submitted by the claimant is irrelevant in terms of judicial review); *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001); *Palimino v. Barnhart*, 515 F.Supp.2d 705, 710 (W.D.Tex. 2007), citing, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(when record as a whole indicates a mixed collection of evidence regarding plaintiff's impairments and their impact, Commissioner's decision is upheld when there is substantial evidence to support it).

In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). Thus, on judicial review the Commissioner's decision is granted great deference, and the decision will not be disturbed unless the court cannot find substantial evidence in the record to support it, or the court finds an error of law was made. *Leggett v. Chater,* 67 f.3d 558, 564 (5th Cir. 1995).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require

3

the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

### Background and Claims of Error

Plaintiff was 39 years of age at the time of the

4

administrative law judge's ("ALJ") decision.[2] Plaintiff obtained a graduate equivalency degree and his past relevant work consisted of work as a deckhand, a carpenter, an A/C mechanic, and a tankerman. In his application for disability and SSI benefits filed in April 2010 the plaintiff asserted that he became disabled and no longer able to work as of March 18, 2010 because of bilateral L5 nerve root entrapment with grade I spondylolisthesis at L5-S1, high blood pressure, and depression. AR pp. 222-223, 224-230, 355.

After his application was denied at the initial stages, the plaintiff requested an ALJ hearing, after which the ALJ issued an unfavorable decision. AR pp. 98-110. The Appeals Council vacated that decision and remanded the case to the ALJ. AR pp. 112-114. Upon remand, the ALJ conducted a new hearing and issued another unfavorable decision. AR pp. 9-27. The ALJ found at the second step that the plaintiff's grade I lumbosacral spondylolisthesis was a severe impairment.[3] At the third step the ALJ concluded that the plaintiff's combination of severe impairments did not meet or medically equal the severity of any listed impairment. AR pp. 15-18.

---

[2] Plaintiff's age placed him in the category of a younger person. 20 C.F.R. § 404.1563(c); § 416.963(c).

[3] The ALJ found that the plaintiff's elevated blood pressure and mental impairments of depression and anxiety were not severe under *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

5

The ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite his severe impairments, the plaintiff was able to do any of his past relevant work or other work in the national economy.[4] The ALJ found the plaintiff had an RFC to perform a sedentary work as defined in the regulations, except as follows: (1) he can lift/carry up to 20 pounds occasionally and up to 10 pounds frequently; (2) he must be allowed to alternate sitting and standing at will to move about (stretch) in place; (3) he cannot climb ladders, ropes, or scaffolds; (4) he can occasionally climb ramp/stairs, stoop, kneel, crouch, and crawl; and (5) he should avoid exposure to temperature extremes and vibration.[5]  AR pp. 19-21.  Given this RFC, and based on the hearing testimony of vocational expert Thomas Mungall, the ALJ concluded that the plaintiff was unable to perform his past relevant work.[6]  However, based on the plaintiff's age, education,

---

[4] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis.  It is the foundation of the findings at steps four and five. 20 C.F.R. § 404.1545; § 416.945

[5] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); § 416.967(a).

[6] The expert testified that all of the plaintiff's past work was classified as either medium/skilled or heavy/semiskilled.  AR
(continued...)

work experience and RFC, the ALJ again relied on the expert's testimony and found that the plaintiff would be able to make a successful adjustment to other work that existed in significant numbers in the national economy, namely, work as an food/beverage order clerk, telephone/information clerk, or surveillance system monitor.  Therefore, the ALJ concluded at the fifth step that the plaintiff is not disabled.  AR p. 22.  The Appeals Council denied the plaintiff's request for review.[7]

In his appeal memorandum the plaintiff argued that the ALJ committed the following errors that require reversal of the ALJ's decision: (1) the ALJ failed to properly evaluate whether the plaintiff met or medically equaled Listing 1.04(A) due to bilateral nerve root impingement; (2) the ALJ's RFC failed to account for the plaintiff's need to stand and move about at will while sitting, as stated by Dr. Plowman in his hearing testimony; and (3) the ALJ failed to account for the plaintiff's medically necessary and prescribed cane for ambulation when assessing his RFC.

## Analysis

At the third step the ALJ found that the plaintiff's severe impairments did not meet or medically equal any of the impairments

---

[6](...continued)
p. 21.

[7] Plaintiff exhausted his administrative remedies before filing this action for judicial review.

listed in Appendix 1, Subpart P, Part 404. Plaintiff argued that the ALJ failed to properly evaluate whether his impairments met or medically equaled Listing 1.04(A). Plaintiff asserted that he satisfies the criteria of Listing 1.04(A) which requires demonstration of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Plaintiff cited evidence in the record which allegedly demonstrated each of these conditions.

Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect, and each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. § 404.1525; § 416.925. A claimant must demonstrate that he meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Id.* The criteria for listings is stringent, and it is the plaintiff's burden to prove that his condition satisfies a listing. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

The record as a whole shows that substantial evidence supports

8

the ALJ's conclusion at step three that the plaintiff is not disabled. In his analysis the ALJ stated that all listings were considered, including 1.04 (disorders of the spine). The ALJ relied on Dr. Plowman's opinion that the record did not demonstrate that the plaintiff's impairments met or equaled the criteria of Listing 1.04 for spinal impairment.[8]

Results from a physical examination conducted by Dr. Adeboye Francis documented the plaintiff's spinal range of motion as unrestricted on May 25, 2010.[9] The ALJ acknowledged that Dr. Steven Wilson reported a limited range of motion during a consultative examination on a March 24, 2011.[10] However, the ALJ concluded, based on Dr. Plowman's evaluation of the records, that the spinal flexion findings of the two consultative examiners were not significantly inconsistent.[11] The ALJ also considered the fact that the plaintiff's records from LSUHCSD/Earl K. Long Medical Center lacked a detailed physical examination for range of motion testing.[12]

The ALJ also specifically noted that neither of the two consultative examination reports establish whether the positive

---

[8] AR pp. 18, 72.

[9] AR p. 369.

[10] AR p. 399.

[11] AR pp. 399, 18, 74.

[12] AR p. 18, 74.

straight leg raising tests were conducted both sitting and supine. Dr. Plowman testified that the positive straight leg raising tests were partially subjective because the examiners failed to document whether: (1) the tests were conducted sitting or lying down; or, (2) produced radicular pain in the leg or caused back pain.[13] Plaintiff failed to cite any record evidence which demonstrates both positive sitting and supine straight leg raising tests.

Plaintiff's argument that Dr. Plowman applied an improper legal standard in forming his medical opinion regarding Listing 1.04(A) is unpersuasive.  Plaintiff did not argue that the ALJ applied an improper legal standard.  The ALJ's decision clearly demonstrates that his finding was based on both the plaintiff's medical records and Dr. Plowman's testimony.  As discussed above, the medical records contained substantial evidence to show that the plaintiff could not satisfy Listing 1.04(A).  Dr. Plowman's discussion of failed radiculopathy or any additional evidence to support his opinion is inconsequential and does not demonstrate a legal error that warrants remand.

With regard to the RFC finding, the plaintiff argued that the RFC failed to account for Dr. Plowman's testimony that he needed to stand and move about at will while sitting.  Plaintiff asserted that Dr. Plowman initially testified that the plaintiff could sit for six hours in a day with ability to "move about, at will."

---

[13] AR p. 73.

Plaintiff argued that the ALJ subsequently redirected Dr. Plowman to testify that the plaintiff only needed to "stand in place and stretch." Plaintiff also argued that the RFC is flawed because it fails to satisfy Social Security Ruling 96-9p which directs that "the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."

The record shows that the ALJ specifically asked Mungall, the vocational expert, "what effect does the [plaintiff's] ability to at will stand up and move about" have on the plaintiff's performance of the occupations listed in his RFC.[14] The vocational expert addressed this issue and testified that the plaintiff should be limited to bench jobs and specified jobs of a clerical nature that are prevalent in the national and local economy.[15] Accordingly, the plaintiff's argument concerning his mobility needs is without merit.

Plaintiff's final claim is that the ALJ's decision should be reversed because in the RFC finding the he did not account for the plaintiff's use of a cane. Plaintiff also provided evidence to show that a cane was medically prescribed after the ALJ's decision was rendered, and argued that the Appeals Council erroneously

---

[14] AR p. 79.

[15] AR p. 80.

failed to find this evidence significant enough to warrant remand.[16]

Review of the record demonstrates this claim of error is also without merit. The RFC finding did not include a specific statement that the plaintiff required a cane for ambulation.[17] Dr. Francis noted that the plaintiff made use of a "non physician prescribed simple cane that is medically necessary." The record also contained documentation that the plaintiff did not require a cane to ambulate.[18] In his decision the ALJ specifically addressed the plaintiff's need for a cane, and acknowledged that medical records indicated his use of a cane. The ALJ did not find that a cane was medically prescribed, or that a healthcare provider instructed him to use one.[19] Nevertheless, the record demonstrates that in giving his opinion on the plaintiff's limitations, Dr. Plowman considered the plaintiff's use of a cane. Mungall relied on this and the remainder of Dr. Plowman's testimony, in rendering his opinion on the types of other work the plaintiff would be able

---

[16] AR pp. 5, 480.

[17] AR p. 20.

[18] AR pp. 369, 394.

[19] AR p. 20. See, SSR 96-6p: Medically required hand-held assistive device - To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

to perform.[20]  Plaintiff did not cite to any evidence or authority that the need to use a cane would further restrict his RFC, or that the jobs identified by Mungall would be precluded if an individual used or was medically prescribed to use a cane.

Therefore, even if it was error for the ALJ not to specifically include the use of a cane in the RFC finding, or for the Appeals Council not to remand based on evidence a cane was medically prescribed after the ALJ's decision, the error was harmless.[21]  The error is harmless, because the record demonstrates that the plaintiff's need to use a cane was in fact considered in determining whether other jobs existed in the national economy that the plaintiff could do given his age, education, work experience and limitations caused by his severe back impairment.

Because the plaintiff had both exertional and nonexertional limitations, the ALJ properly relied on the testimony of a vocational expert at the fifth step.[22]  The occupations identifed

---

[20] AR pp. 75-76, 79-80.

[21] The primary policy underlying the harmless error rule is to preserve judgments and avoid waste of time. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).  Thus, procedural perfection in administrative proceedings is not required. A judgment will not be vacated unless the substantial rights of a party have been affected. Procedural improprieties constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.; Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

[22] It is well established that if a claimant has nonexertional limitations the ALJ uses the Medical-Vocational Guidelines only as
(continued...)

by the expert constitute substantial evidence to support the ALJ's finding at the fifth step that the plaintiff is not disabled because there is other work he can perform that exists in significant numbers in the national economy.[23]

## Conclusion

The analysis above demonstrates that the ALJ's findings are supported by substantial evidence.  The ALJ also applied the proper legal standards in reaching his decision.  Plaintiff's claims of error are without merit, and the final decision of the Commissioner should be affirmed.

## RECOMMENDATION

It is the recommendation of the magistrate judge that, under

---

[22](...continued)
a framework, and is required to obtain vocational expert testimony to support the finding at step five of the disability analysis. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

[23] Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country; when there is a significant number of jobs, in one or more occupations, having requirements which the claimant is able to meet with his physical or mental abilities and qualifications.  It does not matter whether work exists in the immediate area in which the claimant lives, a specific job vacancy exists for the claimant, or the claimant would be hired if he applied for work.  However, isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where the claimant lives are not considered work which exists in the national economy.  20 C.F.R. § 404.1566(a); § 416.966(a).

sentence four of 42 U.S.C. § 405(g), the final decision of Acting Commissioner of Social Security Carolyn W. Colvin denying the application for disability and supplemental security income benefits filed by plaintiff Jason Ansel Tubbs be affirmed, and this action be dismissed.

Baton Rouge, Louisiana, December 7, 2015.

                                         _____
                                         STEPHEN C. RIEDLINGER
                                         UNITED STATES MAGISTRATE JUDGE